Jule v Kiamesha Shores Prop. Owners Assn. Inc. (2022 NY Slip Op 06663)

Jule v Kiamesha Shores Prop. Owners Assn. Inc.

2022 NY Slip Op 06663

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

533627
[*1]Carlos Jule, Appellant,
v
Kiamesha Shores Property Owners Association Inc., Also Known as KSPOA, et al., Respondents.

Calendar Date:October 18, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Carlos Jule, Kiamesha Lake, appellant pro se.
Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains (Eric G. Cheng of counsel), for respondents.

Lynch, J.
Appeal from a judgment of the Supreme Court (Stephan G. Schick, J.), entered July 1, 2021 in Sullivan County, which granted defendants' motion for summary judgment dismissing the complaint.
Plaintiff owns a residence in the Town of Thompson, Sullivan County, and is both a member and a former employee of defendant Kiamesha Shores Property Owners Association Inc. (hereinafter KSPOA), a domestic not-for-profit corporation that is governed by its Declaration of Covenants, Conditions and Restrictions (hereinafter CC & R) and its bylaws. Plaintiff, self-represented, commenced this action against KSPOA and defendant Ralph Guarino, a member of KSPOA, interposing eight causes of action alleging, among other things, violations of the CC & R and bylaws, unpaid overtime wages and defamation per se.[FN1] After joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint. Over plaintiff's opposition, Supreme Court granted defendants' motion upon a determination that plaintiff had not met his burden to demonstrate triable issues of fact or that the challenged actions were protected by the business judgment rule. Still self-represented, plaintiff appeals.
As a starting point, CC & R article XI, § 1 authorizes homeowners and the KSPOA "to enforce . . . all restrictions, conditions, covenants, reservations, liens and charges" imposed by that document. One of the covenants is an agreement by each homeowner to pay annual and special assessments set by KSPOA's Board of Directors, which must fix such assessments "at a uniform rate for all [l]ots" under the auspices of KSPOA. Nonpayment accrues interest and triggers KSPOA's ability to bring an action against the delinquent homeowner.
With this background in mind, we conclude that Supreme Court erred in dismissing plaintiff's second and fifth causes of action alleging that KSPOA impermissibly wrote off or waived $11,480.45 in dues owed by Guarino and his spouse between 2013 and 2015. Plaintiff based this allegation on a "W" written into KSPOA's ledger in each of those years next to amounts that were deducted from balances owed by the Guarinos with no corresponding notation of an applied payment. If such waivers actually occurred, we would review them "under the business judgment rule, which, in the absence of claims of fraud, self-dealing, unconscionability, or other misconduct, is limited to an inquiry of whether the action[s were] authorized and whether [they were] taken in good faith and in furtherance of the legitimate interests of the corporation" (Bluff Point Townhouse Owners Assn., Inc. v Kapsokefalos, 129 AD3d 1267, 1268 [3d Dept 2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 910 [2015]).
Defendants submitted an affidavit from KSPOA's current bookkeeper, Ronda Ottino, averring that there was no legend in the ledger indicating that the "W" denoted a write off or waiver, and that any balances owed by the Guarinos between 2013 and 2015 had been paid in full [*2]as represented in letters from a collection agency so stating. Legend or not, Ottino's affidavit fails to explain what the "W" actually represents. Notably, the ledger includes a category for "payment type" and includes two examples for the Guarino payments, either a "W" or a "K." In his deposition, plaintiff testified that he understood the "W" meant waiver based on an email from KSPOA's former bookkeeper about another homeowner's purported dues write off indicated by a "W" entered on the ledger. Reading defendants' proof in the light most favorable to plaintiff as the nonmoving party, a question of fact remains as to whether KSPOA waived portions of Guarino's dues (see Carpenter v Nigro Cos., Inc., 203 AD3d 1419, 1421 [3d Dept 2022]). It follows that any discussion of the business judgment rule would be premature (cf. Matter of People v Lutheran Care Network, Inc., 167 AD3d 1281, 1286 [3d Dept 2018]). As such, Supreme Court should have denied defendants' motion with respect to the second and fifth causes of action (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).
Defendants did, however, carry their burden with respect to the fourth cause of action seeking to enforce a CC & R provision limiting members' right to lease their properties to three years in any five-year period. Contrary to plaintiff's contention, the decision to suspend enforcement of the rental period limitation did not require amendment to the CC & R. Rather, as discussed above, CC & R enforcement is a shared right of KSPOA and the homeowners. Thus, whether to enforce the rental period limitation falls within the Board's purview under KSPOA's bylaws to exercise "all powers, duties and authority vested in or delegated to [KSPOA] and not reserved to the membership."
To support their motion, defendants provided a September 2015 letter from KSPOA's Board of Directors to all homeowners announcing that "it would be in the best interest of landlords and their tenants" to suspend enforcement of the rental period limitation in anticipation of permanent repeal, citing feedback from homeowners over the past several years. Also included was the result of a January 2019 ballot measure to temporarily suspend enforcement of the rental period limitation "until January 1, 2020 or when the [m]embers approve a new amendment" to the CC & R, which ballot measure was ratified by a vote of 61 members to 4.
Taken together, defendants' proof establishes that the Board, on behalf of KSPOA, affirmatively decided to suspend enforcement of the rental limitation, which decision was authorized under the bylaws, taken in good faith with the support of an overwhelming majority of voting homeowners and therefore protected by the business judgment rule (see Bluff Point Townhouse Owners Assn., Inc. v Kapsokefalos, 129 AD3d at 1268). Plaintiff failed to come forward with any evidence raising a question fact in order to satisfy his shifted burden (see Loch Sheldrake Beach & Tennis Inc. v Akulich, 141 AD3d 809[*3], 813 [3d Dept 2016], lv dismissed 28 NY3d 1104 [2016]). Dismissal of the fourth cause of action was therefore appropriate.
Next, defendants are not entitled to dismissal of the sixth cause of action for unpaid overtime wages. Under the Labor Law, an employee is entitled to 1½ times his or her regular rate of pay for time in excess of 40 hours per week (see 12 NYCRR 142-2.2; Bongat v Fairview Nursing Care Ctr., Inc., 341 F Supp 2d 181, 187 [ED NY 2004]). "To establish liability under the Labor Law on a claim for unpaid overtime, the employee has the burden of proving that he or she performed work for which he or she was not properly compensated, and the employer had actual or constructive knowledge of that work" (O'Donnell v JEF Golf Corp., 173 AD3d 1528, 1529 [3d Dept 2019] [citations omitted]; see Gamero v Koodo Sushi Corp., 272 F Supp 3d 481, 497 [SD NY 2017], affd 752 Fed Appx 33 [2d Cir 2018]).[FN2]
As relevant here, Ottino states in her affidavit that she reviewed plaintiff's compensation history, which showed that he received $640 per week from December 2016 to February 2017, and then $800 per week from March 2017 until his termination in November 2018. According to both Ottino and Carol Krantz, KSPOA's president, plaintiff never submitted a timesheet for more than 40 hours per week, which plaintiff corroborated in his deposition testimony. These averments are insufficient to discharge defendants' burden under the Labor Law, which requires employers to maintain and provide accurate hour and wage rate records for employees (see Labor Law §§ 196-a [a]; 661; 29 NYCRR 142-2.6 [a]; Rivera v Ndola Pharm. Corp., 497 F Supp 2d 381, 388-389 [ED NY 2007]). As defendants have not supported their motion with KSPOA's records,[FN3] plaintiff can maintain his action if he has "sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference" (Kuebel v Black & Decker Inc., 643 F3d 352, 362 [2d Cir 2011] [internal quotation marks, brackets and citation omitted]; see Gamero v Koodo Sushi Corp., 272 F Supp 3d at 498). To that end, plaintiff averred in his verified complaint and testified in his deposition that he was required to work overtime from 5:00 p.m. to 7:00 p.m. on certain weekdays and 11:00 a.m. to 7:00 p.m. on weekends in the summer "if something went wrong with [KSPOA's] pool" and that he worked extra hours setting up, attending and tearing down KSPOA's monthly Board meetings, neither of which were contradicted by defendants' proof. Plaintiff buttressed his overtime claims through the supporting affidavit of Joan Fishman, a former KSPOA Board member during the relevant timeframe, who averred that plaintiff worked as a certified pool operator on weekdays and on weekends from 11:00 a.m. to 7:00 p.m. in 2017 and 2018. Plaintiff's papers calculate overtime compensation due for the hours on those tasks based on his recollection, which is enough to survive summary dismissal in light of defendants' showing[*4](see Chichinadze v BG Bar Inc., 517 F Supp 3d 240, 252 [SD NY 2021]).
Plaintiff's seventh cause of action — as pleaded in his complaint — alleges that Joanne Rashell, apparently in her capacity as KSPOA's treasurer, falsely accused plaintiff of deleting KSPOA computer files in oral and written statements, including in an affidavit. "The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (Loch Sheldrake Beach & Tennis Inc. v Akulich, 141 AD3d at 815 [internal quotation marks and citations omitted]; accord Jackie's Enters., Inc. v Belleville, 165 AD3d 1567, 1570 [3d Dept 2018]). Plaintiff alleged in the complaint that Rashell's statements amounted to an accusation that plaintiff had violated the Computer Fraud and Abuse Act (see generally 18 USC § 1030), which, in his view, fit the serious crime category of defamation per se (see Liberman v Gelstein, 80 NY2d 429, 435 [1992]; Yonaty v Mincolla, 97 AD3d 141, 144 [3d Dept 2012], lv denied 20 NY3d 855 [2013]). Nothing in the pleadings provides any actual words attributed to Rashell accusing plaintiff of such a violation or any other serious crime (see CPLR 3016 [a]), entitling defendants to judgment as a matter of law as to plaintiff's seventh cause of action (compare Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 148 AD3d 1418, 1419 [3d Dept 2017]).[FN4]
We have reviewed the parties' remaining arguments and conclude they lack merit or are academic.
Garry, P.J., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the second, fifth and sixth causes of action; motion denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Supreme Court dismissed plaintiff's retaliatory termination claim and his first, third and eighth causes of action alleging defendants' failure to comply with a discovery order, an invalid election of KSPOA officers and intentional infliction of emotional distress, respectively. As plaintiff raises no challenge to these determinations on appeal, we deem them abandoned (see Edwards v Martin, 158 AD3d 1044, 1046 n 1 [3d Dept 2018]; Brown v Government Empls. Ins. Co., 156 AD3d 1087, 1088 n 1 [3d Dept 2017]).

Footnote 2: We note that plaintiff pleaded only a cause of action under the Labor Law and not the Fair Labor Standards Act (29 USC § 201 et seq. [hereinafter FLSA]). Although no separate FLSA cause of action is before us, plaintiff aptly observes that the analyses of unpaid overtime claims under both FLSA and the Labor Law are nearly identical (see O'Donnell v JEF Golf Corp., 173 AD3d at 1529 n).

Footnote 3: Defendants' failure to submit wage and hour records prevents us from considering their alternate theory that plaintiff fell into the administrative exemption from overtime, which, as pertinent here, required proof that he was "paid for his services a salary" at a minimum weekly rate set according to the region of the state in which he was employed and number of employees working for KSPOA (12 NYCRR 142-2.14 [c] [4] [ii] [d]; see 12 NYCRR 142-2.2).

Footnote 4: Also unavailing for the same reason is plaintiff's reliance on a June 2019 police report indicating that Ottino and Anna Zugibe, vice-president of KSPOA, reported several items stolen from KSPOA's office. Contrary to plaintiff's characterization, the report does not indicate that either Ottino or Zugibe falsely accused him of larceny, nor does it provide an actual statement plaintiff alleges is defamatory in order to meet the requirements of CPLR 3016 (a) — in addition to not having been pleaded in the complaint in the first place.